OSCN Found Document:STATE v. IVEN

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 STATE v. IVEN
2014 OK CR 8
Case Number: S-2013-824
Decided: 07/25/2014
THE STATE OF OKLAHOMA, Appellant, v. WADE MATTHEW IVEN, Appellee.
Cite as: 2014 OK CR 8, __ __

S U M M A R Y O P I N I O N
SMITH, VICE PRESIDING JUDGE:
¶1 Wade Matthew Iven is charged with one count of Kidnapping in violation of 
21 O.S.2011, § 741 (Count 1), one count of 
Endeavoring to Commit an Act of Violence in violation of 21 O.S.2011, § 1378 (Count 2), Assault with a 
Dangerous Weapon in violation of 21 O.S.2011, § 645 (Count 3), and Domestic 
Abuse in violation of 21 O.S.2011, § 644(C) (Count 4), in the 
District Court of Blaine County, Case No. CF-2012-84. Iven was bound over at 
preliminary hearing. Thereafter, Iven filed a Motion to Suppress, and to Quash 
and/or Set Aside Information. After a hearing, the Honorable Paul K. Woodward 
granted the defendant's motion to suppress. The State appeals raising three 
propositions. 
I. A police officer may rely on the instructions of another officer in 
stopping a vehicle, and effectuating an arrest, even though the officer 
conducting the stop and arrest is not privy to all of the facts amounting to 
probable cause for the arrest. 
II. The "collective knowledge doctrine" applies to misdemeanor arrests, 
including arrests for domestic abuse-assault & battery, as equally as felony 
arrests. 
III. Where a motion to suppress evidence is interposed by the appellee, the 
burden of proof is on the proponent of the motion. ¶2 The charges against Iven stem from his arrest for a single misdemeanor 
count of domestic abuse. Although the record is sparse, it is sufficient to 
address the very narrow question presented. Deputy Craig Smith of the Blaine 
County Sheriff's department was dispatched to a call of an on-going domestic 
dispute. O.R. 34-35. Also responding to the call were Deputy Lonnie Spiva and 
Officer Buddy King from the Okeene Police Department. O.R. 38, 84. Within ten 
minutes of receiving the call, Deputy Smith and Officer King arrived in the area 
and located the alleged victim, B.H., hiding in a trash trailer near the 
airport.
¶3 Still visibly shaken and crying, B.H. described being involved in an 
altercation with Iven as they were driving down the road. They had been in a 
dating relationship. During the altercation, she managed to jump from the moving 
vehicle and run into a field. Deputy Smith personally observed recent physical 
injuries to B.H. including blood on her nose and under her eye, swelling to the 
left side of her mouth, and bruises and abrasions on her arms and legs. Deputy 
Spiva did not respond to the victim's location and, instead, attempted to locate 
Iven. Iven was found near a car wash in Okeene and was arrested for domestic 
abuse approximately one hour after the initial call was received by police. The 
arrest was made at the request of Deputy Smith and based on information known to 
him. Further investigation after the arrest led to additional charges. 
¶4 Iven filed a motion to suppress arguing, inter alia, that because 
Deputy Spiva neither personally observed the recent injuries to the alleged 
victim nor was he aware of the existence of such injuries through information 
communicated by another officer, Iven's arrest for domestic abuse was invalid 
under Section 196(6) of Title 22. The State urged that the collective knowledge 
doctrine could be applied to justify Iven's warrantless arrest for domestic 
abuse. In response, Iven did not dispute the general applicability of the 
doctrine, but argued that because information known to Deputy Smith was not 
actually communicated to Deputy Spiva, the arrest was unlawful.
¶5 The court found that Deputy Smith did personally observe recent physical 
injury to the alleged victim. Although there was some dispute as to whether 
Deputy Smith actually relayed information concerning the injury to Deputy Spiva, 
the trial court made a factual finding that Deputy Smith did not do so. Because 
this information was not communicated, the trial court found the collective 
knowledge doctrine could not operate to justify the arrest under Section 196(6). 
Concluding that Iven's arrest was unlawful, the court suppressed evidence 
derived therefrom.
¶6 The State appeals under the authority of 22 O.S.2011, § 1053(5) and asserts that the 
suppressed evidence forms a substantial part of the State's evidence and the 
State's ability to prosecute Iven is substantially impaired absent the 
suppressed evidence. Appellate review is, therefore, in the best interests of 
justice. State v. Sayerwinnie, 2007 OK CR 11, ¶ 6, 157 P.3d 137, 139. This Court reviews the trial court's 
ruling on Iven's motion to suppress for an abuse of discretion. State v. 
Ramos, 2013 OK CR 
3, 
¶ 14, 297 P.3d 
1251, 1254. An abuse of discretion is any unreasonable or arbitrary action 
taken without proper consideration of the facts and law pertaining to the issue; 
a clearly erroneous conclusion and judgment, clearly against the logic and 
effect of the facts. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. Here, the trial court abused its 
discretion and the State's request for relief should be granted. 
¶7 Before reaching the merits of the legality of Iven's arrest, we must first 
address two preliminary questions; the first being which party bears the burden 
of establishing the legality of a misdemeanor arrest challenged, not on 
constitutional grounds, but under Section 196 of Title 22. In Proposition III, 
the State contends that the trial court erroneously placed the burden on the 
State to demonstrate legality of the warrantless arrest.
¶8 In the context of a constitutional challenge to the legality of a 
warrantless search or seizure, we have recognized that the State bears the 
burden to establish that the search or seizure was lawful. Delgarza-Alzaga v. 
State, 2001 OK CR 
30, ¶ 4, 36 P.3d 
454, 455; State v. McLemore, 1977 OK CR 24, ¶ 8, 561 P.2d 1367, 1369. The burden lies with the State at a 
suppression hearing because warrantless searches and seizures are presumptively 
unreasonable under the State and Federal Constitutions. Delgarza-Alzaga, 
2001 OK CR 30, ¶ 4, 36 P.3d at 455; 
Blackburn v. State, 1978 OK CR 24, ¶¶ 21, 23; 575 P.2d 638, 642. 
¶9 Our decisions in the area of constitutional challenges do not necessarily 
answer the question in the present case. Here we must determine who bears the 
burden when the lawfulness of a warrantless misdemeanor arrest is challenged 
under statute. This is a question we have not squarely addressed. Section 196 of 
Title 22 governs warrantless arrests and strictly limits the circumstances under 
which a warrantless misdemeanor arrest is permitted. 22 O.S.2011, § 196. Absent one of the 
enumerated exceptions, a warrant must be obtained to arrest a person for a 
misdemeanor offense. In this manner, Section 196 operates much like 
constitutional guarantees which create a preference for a judicial determination 
of probable cause. Because Section 196, provides only limited exceptions 
authorizing a warrantless misdemeanor arrest, the burden should be on the State 
to prove that a challenged arrest falls within a statutory exception. 
C.f., Davis v. State, 1979 OK CR 40, ¶ 4, 594 P.2d 1229, 1231 (noting that it was the State's 
burden to prove compliance with statutorily mandated maintenance requirements 
for a breathalyzer). We therefore conclude that the trial court properly placed 
the burden on the State to justify the warrantless misdemeanor arrest.
¶10 As a second preliminary matter, we must determine whether the "collective 
knowledge" doctrine can be applied in the present case. The rule for imputing 
knowledge from one officer to another is known variously as the 
"collective-knowledge" doctrine or the "fellow-officer" rule. United States 
v. Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008). Generally stated, the 
doctrine allows an officer to stop, arrest, or search a suspect in limited 
circumstances, even if the officer does not have firsthand knowledge of all of 
the facts that amount to reasonable suspicion or probable cause to justify the 
action. This principle derives from the recognition that law enforcement 
officers must be permitted to work collectively in the performance of their 
duties and act on directions and information given by one officer to another. 
United States v. Duval, 742 F.3d 246, 253 (6th Cir. 2014).
¶11 In the proceedings below, the parties and the trial court implicitly 
believed that, as a general principle, the collective knowledge doctrine could 
apply in determining the validity of an arrest claimed to be unlawful under 
statute. In this appeal, the State notes that the Tenth Circuit in United 
States v. Wilkinson, 633 F.3d 938 (10th Cir. 2011) extended the application 
of the doctrine to stops for misdemeanor offenses and argues that the trial 
court incorrectly applied the doctrine in the case at bar. However, as an 
alternative basis to uphold the court's suppression of evidence, Iven argues for 
the first time on appeal, that the doctrine cannot apply to the statutory 
challenge at issue here. He asserts that the collective knowledge doctrine is a 
product of constitutional challenges brought under the Fourth Amendment and 
states are free to impose greater restrictions on police conduct. He argues that 
the Legislature elected to impose such a greater restriction by the plain 
language of Section 196(6). Although not previously raised, we must consider 
this question as a preliminary matter.
¶12 In relevant part, Section 196 provides that a peace officer may, without 
a warrant, arrest a person "[a]nywhere, including a place of residence of the 
person, if the peace officer has probable cause to believe the person within the 
preceding seventy-two (72) hours has committed an act of domestic abuse as 
defined by Section 60.1 of this title, although the assault did not take place 
in the presence of the peace officer. A peace officer may not arrest a person 
pursuant to this section without first observing a recent physical injury to, or 
an impairment of the physical condition of, the alleged victim." 
22 O.S.2011, § 196(6) (emphasis added); 
see also 22 O.S.2011, § 
60.16(B)(1). He claims the plain language of the statute requires the 
arresting officer to personally observe the injury or impairment and, thus, 
excludes the possibility that the collective knowledge doctrine might apply.
¶13 It is a fundamental principle in statutory construction that we must 
ascertain and give effect to the intention of the Legislature. State v. 
Stice, 2012 OK CR 
14, ¶ 11, 288 P.3d 
247, 250. Legislative intent is to be determined first by the plain and 
ordinary language of the statute. Johnson v. State, 2013 OK CR 12, ¶ 10, 308 P.3d 1053, 1055. "A statute should be given a 
construction according to the fair import of its words taken in their usual 
sense, in conjunction with the context, and with reference to the purpose of the 
provision." Id. (citation omitted). In determining legislative intent, we 
may also look to other statutes on the same or relative subjects as well as the 
natural or absurd consequences of any particular interpretation. Stice, 
2012 OK CR 14, ¶ 11, 288 P.3d at 
250.
¶14 Contrary to Iven's assertion, the plain language of Section 196(6) 
contains no requirement that the arresting officer personally observe the recent 
injury or impairment to the alleged victim. To be sure, we must presume that the 
Legislature was aware of our decisions and contemplated them in amending the 
statute. Rogers v. Bailey, 2011 OK 69, ¶ 13, 261 P.3d 1150, 1156. Long before Section 196(6) was 
adopted, in Holt v. State, 1973 OK CR 38, 506 P.2d 561, we acknowledged that the collective 
knowledge doctrine was a firmly rooted principle of law. Holt, 
1973 OK CR 38, ¶ 14, 506 P.2d at 566. 
Had the Legislature intended to reject the application of the doctrine, it could 
have easily done so by imposing a requirement that the arresting officer 
personally observe the injury or impairment to the alleged victim. It did not do 
so and we will not read into a statute a requirement that is not there. 
Dawkins v. State, 2011 OK CR 1, ¶ 10, 252 P.3d 214, 218. More significantly, Iven's position 
ignores the language of Section 60.16 of Title 22.
¶15 In addition to restating the language contained in Section 196(6), 
Section 60.16 requires that an arrest for domestic abuse be based on an 
investigation by the officer "of the circumstances surrounding the incident, 
past history of violence between the parties, statements of any children present 
in the residence, and any other relevant factors." 22 O.S.2011, § 60.16(B)(2). A rule that 
excluded the applicability of the collective knowledge doctrine would frustrate 
the stated unequivocal intent of the Legislature in this regard. With the 
possible exception of domestic abuse arising in a small community with an 
arresting officer who has a long history of service - one who might then have 
personal knowledge of the parties, their past history, and other relevant 
information - it would be exceedingly difficult, if not impossible, for one 
officer to possess personal knowledge of all of the information required by 
Section 60.16 prior to effectuating an arrest. With confidence we can say the 
Legislature did not intend such a result.
¶16 Having determined that the doctrine applies to a purely statutory 
challenge to the legality of an arrest, we now address the trial court's 
application of the rule in the present case. The State argues that the trial 
court's application of the collective knowledge doctrine was incorrect. The 
State's arguments are well taken.
¶17 Over forty years ago in Holt we said: "It is well settled that an 
agent may rely upon his fellow officers to supply the information which forms 
the basis of the arresting officer's reasonable grounds for believing that the 
law is being violated. Holt, 1973 OK CR 38, ¶ 14, 506 P.2d at 566. Since that time, 
the Tenth Circuit in Chavez succinctly summarized the manner in which the 
collective knowledge doctrine can apply. Although not mutually exclusive, the 
court generally classified collective knowledge relationships as either 
"horizontal" or "vertical." Chavez, 534 F.3d at 1345.
¶18 Horizontal collective knowledge applies in situations where a number of 
individual law enforcement officers have pieces of information but no single 
officer possesses all of the information necessary to establish reasonable 
suspicion or probable cause to justify the action taken. Id. Because no 
one officer has the requisite level of knowledge, the horizontal collective 
knowledge doctrine requires a court to determine whether the individual officers 
communicated the information that they possessed individually in order to 
effectively pool their information and justify the action taken based thereon. 
Id.
¶19 On the other hand, vertical collective knowledge applies where one 
officer has knowledge of facts rising to the level of reasonable suspicion or 
probable cause, as may be the case, and directs another officer to act without 
communicating the facts known by him to the second officer. Chavez, 534 
F.3d at 1345. This rule allows the knowledge of the requesting officer to be 
imputed to the acting officer, id. at 1347, and derives from the Supreme 
Court decision in U.S. v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 
L.Ed.2d 604 (1985). There the Court recognized that police officers are entitled 
to assume another officer or law enforcement agency requesting aid in performing 
a search or seizure has the information necessary to legally justify the action; 
however, the fact that one officer may follow a directive from others does not 
insulate the search or seizure if the directing officer or agency did not have 
legally sufficient information. Hensley, 469 U.S. at 
230-31, 105 S.Ct. at 681 (citing Whitely v. Warden, 
401 
U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971)).
¶20 In situations involving vertical collective knowledge, the legality of a 
search or seizure stands or falls on the sufficiency of the information known to 
the officer directing that the challenged action be taken. Chavez, 534 
F.3d at 1346; see also Hensley, 469 U.S. at 231, 105 S.Ct. at 681 
(concluding that police officer may effectuate an arrest and conduct a search 
incident thereto on the basis of a flyer or bulletin issued by another agency, 
even though the bulletin did not set forth facts necessary to establish probable 
cause, but the legality of the arrest is determined by whether the agency 
issuing the bulletin had sufficient information to establish probable cause for 
the arrest). It is inconsequential whether the officer relying on the directive 
had knowledge of the specific facts which led to the request for assistance. 
Hensley, 469 U.S. at 231, 105 S.Ct. at 681. As explained by the 
Supreme Court: "In an era when criminal suspects are increasingly mobile and 
increasingly likely to flee across jurisdictional boundaries, this rule is a 
matter of common sense: it minimizes the volume of information concerning 
suspects that must be transmitted to other jurisdictions and enables police in 
one jurisdiction to act promptly in reliance on information from another 
jurisdiction." Id.
¶21 The matter sub judice presents us with an application of the 
"vertical" collective knowledge doctrine and the principles announced in 
Hensley. Under these circumstances, it is irrelevant whether Deputy Smith 
actually conveyed his observations of the alleged victim's injuries to Deputy 
Spiva. Spiva was entitled to assume the request to arrest Iven was based on 
legally sufficient information known to a fellow officer directing the arrest be 
made. The relevant inquiry is whether Deputy Smith had the requisite information 
to support Iven's arrest at the time he made the request for action to be taken. 
On this point there is no dispute. Because Deputy Smith observed recent injury 
to the alleged victim, his knowledge is imputed to Deputy Spiva.
¶22 The trial court's determination that Iven's arrest was unlawful pursuant 
to Section 196(6) was based upon its finding that Deputy Spiva lacked personal 
knowledge of recent injury or physical impairment to the alleged victim and the 
court's disputed finding that Deputy Smith failed to communicate his personal 
knowledge when asking for assistance in arresting Iven for domestic abuse. This 
conclusion was an unreasonable action taken without proper consideration of the 
facts and law pertaining to the issue and, therefore, the trial court abused its 
discretion in granting Iven's motion to suppress. 
DECISION
¶23 The decision of the District Court of Blaine County granting Defendant's 
motion to suppress evidence is REVERSED and the case is REMANDED 
to the District Court for further proceedings consistent with this opinion. 
Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, 
Title 22, Ch.18, App. (2014), the MANDATE is ORDERED issued upon 
the delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF BLAINE COUNTY
THE 
HONORABLE PAUL K. WOODWARD, DISTRICT JUDGE



 ATTORNEYS AT TRIAL 
 ERIC N. EDWARDS
114 EAST BROADWAY, STE. 810
P.O. BOX 
 5188
ENID, OK 73701
COUNSEL FOR DEFENDANT
 
 BARRY RETHERFORD
ASSISTANT DISTRICT ATTORNEY
BLAINE 
 COUNTY
DISTRICT ATTORNEY'S OFFICE
BLAINE COUNTY COURTHOUSE
THIRD 
 FLOOR
212 NORTH WEIGLE
WATONGA, OK 73772
COUNSEL FOR 
 STATE
 
 ATTORNEYS ON APPEAL
 BARRY RETHERFORD
ASSISTANT DISTRICT ATTORNEY
BLAINE 
 COUNTY
DISTRICT ATTORNEY'S OFFICE
BLAINE COUNTY COURTHOUSE
THIRD 
 FLOOR
212 NORTH WEIGLE
WATONGA, OK 73772
COUNSEL FOR 
 APPELLANT/STATE
  
 JAMES L. HANKINS
TIMBERBROOKE BUSINESS CENTER
929 N.W. 164TH ST.
EDMOND, OK 73013
COUNSEL FOR 
 APPELLEE

OPINION BY: Smith, V.P.J.
Lewis, P.J.: concur
Lumpkin, J.: concur 
in results
C. Johnson, J.: concur
A. Johnson, J.: concur


LUMPKIN, JUDGE: CONCUR IN RESULTS
¶1 I concur in the decision to reverse the District Court's order granting 
the motion to suppress and remand the case for further proceedings. However, I 
find that the defendant's claim, raised for the first time on appeal, that the 
collective knowledge doctrine cannot apply to the statutory challenge at issue, 
should be reviewed for plain error only. 
¶2 To be entitled to relief under the plain error doctrine, Appellant must 
prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 
2) that the error is plain or obvious; and 3) that the error affected his 
substantial rights, meaning the error affected the outcome of the proceeding. 
Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923; 20 O.S.2011, § 3001.1. If these elements are 
met, this Court will correct plain error only if the error "seriously affect[s] 
the fairness, integrity or public reputation of the judicial proceedings" or 
otherwise represents a "miscarriage of justice." Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. Applying this 
analysis, I find no error and thus no plain error. 





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 None Found.